IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ALEXIS SWEARINGEN,**

       **Plaintiff,**

v.

**PLEASANTON UNIFIED SCHOOL
DISTRICT 344, et al.,**

       **Defendants.**

Case No. 20-2630-DDC-TJJ

### MEMORANDUM AND ORDER

Presently pending before the court is a trio of dispositive motions, and this Order decides each of them. *First*, and easiest to resolve, is defendant Paul Filla's unopposed Motion for Judgment on the Pleadings (Doc. 9). The court denies this motion because it's now moot. The parties already dismissed defendant Filla from this action by their Stipulation of Dismissal (Doc. 42). *Second*, defendant Pleasanton Unified School District 344 filed a Motion for Partial Judgment on the Pleadings (Doc. 5). The court grants this motion for reasons explained in Part III.C., below. *Third*, the Board of County Commissioners for Linn County, Kansas and defendant Filla filed a Joint Motion to Dismiss (Doc. 7). The court grants this motion in part but denies it in part, as explained in Part III.B., below.

**I.    Factual and Procedural Background**

    **A.    Factual Background**

The following facts come from plaintiff's Second Amended Complaint (Doc. 87). Plaintiff is a Kansas resident. Doc. 87 at 2 (Second Am. Compl. ¶ 2). Defendants are: (1) the Board of County Commissioners for Linn County, Kansas (Linn County BOCC); (2) Pleasanton

Unified School District 344 (Pleasanton); and (3) Linn County Sheriff Kevin Friend.[1]  *Id.* at 2 (Second Am. Compl. ¶¶ 3–5).  The Second Amended Complaint faults each defendant for injuries plaintiff sustained while attending Pleasanton High School.  *See id.* at 1 (Second Am. Compl. ¶ 1).

During the summer of 2017, when plaintiff was 15 years old, David Allen Huggins had illegal sex with her.  *Id.*  Mr. Huggins was 44 years old when this happened.  *Id.*  In September 2017, plaintiff "learned that . . . Huggins had gotten her pregnant."  *Id.* at 6 (Second Am. Compl. ¶ 44).  Plaintiff knew Huggins through more than one avenue.  His daughter was one of plaintiff's friends.  *Id.* at 4 (Second Am. Compl. ¶ 27).  Also, Mr. Huggins worked at her school.  *Id.* (Second Am. Compl. ¶ 26).  Specifically, he was the School Resource Officer there.  *Id.*

Plaintiff and Mr. Huggins first met in March 2017 and interacted with one another regularly by the beginning of the 2018 school year.  *See id.* at 4–5 (Second Am. Compl. ¶¶ 26–43).  For instance, Mr. Huggins frequently sent plaintiff text messages.  *Id.* at 4 (Second Am. Compl. ¶¶ 28–30).  He often visited with her in person.  *See id.* at 4–5 (Second Am. Compl. ¶¶ 31–38).  Mr. Huggins was physically intimate with plaintiff in public.  *Id.* at 5 (Second Am. Compl. ¶ 37).  And, Mr. Huggins ultimately advanced the interactions to include sexual intercourse.  *Id.* (Second Am. Compl. ¶ 34) ("On August 8, 2017, . . . Huggins took [plaintiff] on a 'date' and had sex with her.").  In September 2017, plaintiff learned she was pregnant.  *Id.* at 6

---

[1] Initially, plaintiff's Complaint also named David Allen Huggins as a defendant.  Doc. 1 at 2 (Compl. ¶ 6).  But plaintiff since has dismissed Mr. Huggins from the case.  Doc. 27 (Notice of Voluntary Dismissal).

Also, plaintiff initially sued Linn County Sheriff Paul Filla.  Doc. 1 at 2 (Compl. ¶ 4); Doc. 14 at 2 (Am. Compl. ¶ 4).  Plaintiff noted that defendant Filla had since resigned as sheriff.  Doc. 1 at 2 (Compl. ¶ 4); Doc. 14 at 2 (Am. Compl. ¶ 4).  Following defendant Filla's unopposed Motion for Judgment on the Pleadings, the parties dismissed him from this action.  Doc. 42.  Nonetheless, this Memorandum and Order addresses defendant Filla's motion (Doc. 9).  And, the court notes that plaintiff's Second Amended Complaint added Linn County Sheriff Kevin Friend as a defendant.  Doc. 87 at 2 (Second Am. Compl. ¶ 5).  Defendant Friend has not filed any motions in this case.

(Second Am. Compl. ¶ 44).  Mr. Huggins was the father of her child and plaintiff informed him of her pregnancy.  *Id.* (Second Am. Compl. ¶ 45).  Plaintiff terminated her pregnancy in October 2017.  *Id.* (Second Am. Compl. ¶ 50).  Mr. Huggins continued the sexual relationship with plaintiff until January 2018.  *Id.* at 5 (Second Am. Compl. ¶ 35).

The interactions and sexual contact leading to plaintiff's pregnancy occurred both on and off school grounds.  *Compare id.* at 4 (Second Am. Compl. ¶ 31) ("Huggins also would interact with [plaintiff] when she was babysitting Huggins'[s] grandson at Huggins'[s] house."), *with id.* at 5 (Second Am. Compl. ¶ 41) ("[Plaintiff] began going to see . . . Huggins in his office [at Pleasanton High School] almost daily and sometimes multiple times a day."); *see also id.* (Second Am. Compl. ¶ 43) ("Huggins and [plaintiff] would sometimes kiss or inappropriately touch while in the school building.").

The Sheriff's Department first received notice about these interactions when an alarmed citizen sent Sheriff Filla a photo of plaintiff and Mr. Huggins in a restaurant engaging in physical, intimate contact.  *Id.* at 5 (Second Am. Compl. ¶ 38).  Teachers and administrators at plaintiff's school learned about plaintiff's pregnancy and gossiped about it.  *Id.* at 6 (Second Am. Compl. ¶ 47).  The school district's Superintendent "began making 'surprise' visits to . . . Huggins['s] office when [plaintiff] was there."  *Id.* (Second Am. Compl. ¶ 49).  In the fall of 2017, a teacher at plaintiff's high school even emailed the Superintendent about Mr. Huggins and plaintiff and "carbon-copied [plaintiff] on the email."  *Id.* (Second Am. Compl. ¶ 51); *see also id.* (Second Am. Compl. ¶ 53).  Also, the high school's principal met with plaintiff personally during the fall of 2017.  He "told her that she was not allowed to continue going to see . . . Huggins in his office in the school building."  *Id.* at 7 (Second Am. Compl. ¶ 55).

3

On October 10, 2017, Mr. Huggins pulled plaintiff out of class to come to his office, where he told her that Sheriff Filla had called him and told him to "stay away" from plaintiff. *Id.* (Second Am. Compl. ¶ 56). Yet, "Huggins remained [in service as] an on-duty deputy for the Linn County Sheriff's Office and a school resource officer in the Pleasanton High School." *Id.* (Second Am. Compl. ¶ 57). In fact, Mr. Huggins even was "assigned to perform a child welfare interview of [plaintiff] at the school." *Id.* (Second Am. Compl. ¶ 59). In January 2018, authorities arrested Mr. Huggins. *Id.* at 8 (Second Am. Compl. ¶ 65). He later pleaded guilty to charges of aggravated indecent liberties with a child. *Id.* (Second Am. Compl. ¶ 70). In February 2019, a Kansas court sentenced him to 183 months in prison. *Id.*

### B. Procedural Background

Plaintiff filed her Complaint in December 2020. Doc. 1 (Compl.). Then, in March 2021, plaintiff filed her Amended Complaint (Doc. 14). In November 2021, plaintiff filed her Second Amended Complaint (Doc. 87). The parties have agreed that the Second Amended Complaint now governs the pending dispositive motions. *See* Doc. 92.

This Memorandum and Order concerns the motions filed by defendant Filla, who has been dismissed, the Linn County Board of County Commissioners, and Pleasanton. The Second Amended Complaint asserts that the Linn County BOCC violated 42 U.S.C. § 1983 in three distinct ways: (1) by failing to supervise and discipline its staff (Count I); (2) by failing to train its employees (Count II); and (3) by its negligent hiring of staff (Count III). Plaintiff also claims the Linn County BOCC violated Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–88, by discriminating against plaintiff on the basis of her sex (Count IV). Plaintiff also claims common law negligence (Count V) against this defendant. Doc. 87 at 9–18 (Second Am. Compl. ¶¶ 77–131).

4

Against Pleasanton, the Second Amended Complaint asserts that the school district (1) violated Title IX by discriminating against plaintiff because of her sex (Count VI), (2) violated 42 U.S.C. § 1983 by failing to train its staff (Count VII), and (3) also is liable for common law negligence (Count VIII). *Id.* at 18–22 (Second Am. Compl. ¶¶ 132–64).[2]

Defendants responded to plaintiff's Complaint with a slew of filings, each of which now applies to the Second Amended Complaint. *See* Doc. 92. First, Pleasanton filed an Answer (Doc. 4). Then, Pleasanton filed a Motion for Partial Judgment on the Pleadings (Doc. 5). Later, the originally-named Linn County defendant and defendant Filla filed a Joint Motion to Dismiss (Doc. 7). Defendant Filla filed an Answer (Doc. 8). Later, defendant Filla filed a Motion for Judgment on the Pleadings (Doc. 9).

Plaintiff filed a Response (Doc. 11) to Pleasanton's Motion for Partial Judgment on the Pleadings. And, she filed a Response (Doc. 12) to the Joint Motion to Dismiss filed by defendants Linn County BOCC and Filla.[3] That same day, plaintiff filed her Amended Complaint. Doc. 14 (Am. Compl.). The parties jointly agreed to dismiss defendant Filla, which rendered his Motion for Judgment on the Pleadings (Doc. 9) moot. So, the only pending motions remaining for the court to decide are Pleasanton's Motion for Partial Judgment on the Pleadings (Doc. 5) and Linn County BOCC's Motion to Dismiss (Doc. 7). The parties have advised that they agree that these motions apply to the Second Amended Complaint relative to plaintiff's

---

[2]   The Amended Complaint also asserted a cause of action against Mr. Huggins. *Id.* at 22–23 (Am. Compl. ¶¶ 162–69). But, plaintiff since has dismissed Mr. Huggins from this action. *See* Doc. 27. The Second Amended Complaint does not include Count IX against Mr. Huggins. *Compare* Doc. 14 at 22, *with* Doc. 87 at 22–23. The Amended Complaint and the Second Amended Complaint reference Sheriff Filla generally, but it doesn't assert any claims against him. *See* Doc. 14 (Am. Compl.); Doc. 87 (Second Am. Compl.). And regardless, the court already dismissed Sheriff Filla from the case. *See* Doc. 42.

[3]   All of these motions are fully briefed. *See* Docs. 6, 10, 15.

5

Second Amended Complaint. Doc. 92. So, the court deems these motions as ones challenging the Second Amended Complaint.

## II.     Legal Standards

### A.     Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Linn County BOCC has filed a Motion to Dismiss (Doc. 7) under Fed. R. Civ. P. 12(b)(6). To consider the motion, the court also considers Fed. R. Civ. P. 8(a)(2). This rule requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although Rule 8 "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the complaint's factual allegations are true. *Id.* (citing *Twombly*, 550 U.S. at 555). But, this obligation does not mean that the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

### B. Motion for Judgment on the Pleadings

Pleasanton has filed a Motion for Partial Judgment on the Pleadings (Doc. 5). Fed. R. Civ. P. 12(c) governs this motion. Courts evaluate a Rule 12(c) motion under the same standard used to evaluate a motion to dismiss under Rule 12(b)(6), described above. *Borde v. Bd. of Cnty. Comm'rs of Luna Cnty., N.M.*, 514 F. App'x 795, 799 (10th Cir. 2013) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

### C. Failure to Train Claims

Here, both dispositive motions argue that the court must dismiss the failure to train claims under § 1983 as a matter of law. *See* Doc. 6 at 8 ("Count VII of Plaintiff's [Second Amended] Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c)."); *see also* Doc. 7 at 1 (explaining that Linn County BOCC moves "for the dismissal of Count II, which is a failure to train claim[.]"). While the two failure to train claims rely on different factual allegations, the court uses the same analytical framework to evaluate the two claims.

In a sense, this framework begins with understanding what a failure to train claim isn't. Such a claim must assert more than a theory of respondeat superior. *Monnell v. Dep't of Soc.*

*Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that a "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (italics in original)). This premise means that a § 1983 plaintiff cannot successfully sue a municipality solely on the theory that one of its employees or agents has inflicted an injury on her. *Id.* at 694.

With this threshold limitation in mind, our Circuit has identified three requirements for failure to train claims. Subsections one, two, and three discuss them.

### 1. Establishing a Municipal Policy or Custom

*First*, "to establish municipal liability, a plaintiff must . . . demonstrate a 'municipal policy or custom,' which may take one of" several forms. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Relevant here, this menu of options includes "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson*, 627 F.3d at 788 (internal quotation marks and citations omitted).

### 2. Showing a Causal Connection

*Second*, and only if she can demonstrate a municipal policy or custom, a failure to train plaintiff next "must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller*, 932 F.3d at 1284 (quoting *Bryson*, 627 F.3d at 788). This second step can ratchet up the plaintiff's pleading requirements. If, for instance, "'a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997)). And when "the municipal liability claim is based upon inadequate training," courts in our Circuit must apply this causal

element "with especial rigor." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." (internal quotation marks and citation omitted)).

### 3. Demonstrating Deliberate Indifference

Last, § 1983 plaintiffs can't advance "claims of inadequate . . . training," unless they "'demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Waller*, 932 F.3d 1277 at 1284 (quoting *Brown*, 520 U.S. at 407). In this context, the phrase "deliberate indifference" has a technical meaning. "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410 (brackets and internal quotation marks omitted)). "A showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407.

Failure to train plaintiffs can satisfy this final step "'when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'" *Waller*, 932 F.3d at 1284 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). "'In most instances, notice can be established by proving the existence of a pattern of tortious conduct.'" *Id.* (quoting *Barney*, 143 F.3d at 1307). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. Contemporaneous "or subsequent conduct cannot establish a pattern of

9

violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates.'" *Id.* at 63 n.7 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)) (quotation cleaned up).

If the plaintiff can't prove "a pattern of unconstitutional behavior[,]" the likely viability of her failure to train claim is at its weakest. *Waller*, 932 F.3d at 1284 (internal quotation marks and citation omitted). Instead of relying on a pattern, plaintiffs can prove deliberate indifference based on the "single-incident" theory articulated in *Harris*. 489 U.S. 378 (2011); *see also Connick*, 563 U.S. at 63. In this scenario, and within "a narrow range of circumstances[,]" a failure to train plaintiff must show that "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Waller*, 932 F.3d at 1284 (internal quotation marks and citations omitted). This second option is a rare circumstance, and "the unconstitutional consequences of failing to train" must be "patently obvious[.]" *Connick*, 563 U.S. at 64.

## III. Analysis

### A. Defendant Filla's Motion for Judgment on the Pleadings

Defendant Filla filed previously a Motion for Judgment on the Pleadings (Doc. 9). But as already explained, the court needn't consider it because the parties since have dismissed defendant Filla from this lawsuit. *See* Doc. 42 at 1 (explaining that plaintiff and defendants "agree that Paul Filla should be dismissed"). Thus, the court denies defendant Filla's Motion for Judgment on the Pleadings (Doc. 9) because the Stipulation of Dismissal (Doc. 42) rendered it moot.

B.     **Linn County BOCC's Motion to Dismiss**

Linn County BOCC's Motion to Dismiss (Doc. 7) makes two central arguments. The court outlines and evaluates both arguments, in turn, below.

1.  **Whether Plaintiff Can Sue "Linn County, Kansas"**

Plaintiff's initial Complaint named "Linn County, Kansas" as a defendant in this lawsuit. *See, e.g.*, Doc. 1 at 2 (Compl. ¶ 3). But, this choice presented a problem. Kansas state law provides that in "all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____[.]'" Kan. Stat. Ann. § 19-105. Given this straightforward requirement, the Linn County BOCC's motion to dismiss presents an equally straightforward argument: plaintiff failed to comply with this statute, so the court must dismiss the claim. *See* Doc. 7 at 5–6. But, plaintiff resolved this dispute with her First Amended Complaint. *See* Doc. 37 (explaining the parties' agreement that the pending dispositive motions "could be considered relative to Plaintiff's First Amended Complaint (which amends the original Complaint only insofar as correcting the name of the Linn County Defendant")). And the Second Amended Complaint names as a defendant the "Board of County Commissioners of the County of Linn County, Kansas[.]" *See* Doc. 87 at 1. So, the court denies this part of Linn County BOCC's Motion to Dismiss (Doc. 7) because it's moot.

Still, a larger conflict remains over plaintiff's failure to train claim against the Linn County BOCC. The court turns to that conflict now.

2.  **Whether Plaintiff's Factual Allegations About Her Failure to Train Claim Suffice to State a Plausible Claim (Count II)**

To state a failure to train claim, as asserted in Count II, plaintiff properly must plead three elements. She must: (1) identify a policy or custom of failing to supervise or train employees;

(2) plead facts that, if proved, could establish a "'direct causal link between the policy or custom and the injury alleged[;]'" and (3) plead facts that could "'demonstrate that the . . . action was taken with "deliberate indifference" as to its known or obvious consequences.'"  *Waller*, 932 F.3d at 1283–84 (first quoting *Bryson*, 627 F.3d at 788; then quoting *Brown*, 520 U.S. at 407). Linn County BOCC's Motion to Dismiss argues that plaintiff hasn't satisfied this pleading burden.  *See* Doc. 7 at 6–9.  Plaintiff contends she has.  *See* Doc. 12 at 3–4.

Linn County BOCC argues plaintiff's failure to train claim in Count II "simply lacks the requisite pleaded facts from which a jury could conclude that the training Linn County [BOCC] provided to employees was inadequate."  Doc. 7 at 6.  Plaintiff responds, noting she alleges that Linn County BOCC was acting under color of state law when—by failing to train its staff about "the handling and proper investigation of allegations of sexual harassment and abuse"—plaintiff "suffered damages from being sexually assaulted numerous times by a Sheriff's officer who was over 40 years old."  Doc. 87 at 12–13 (Second Am. Compl. ¶¶ 94, 100).  Also, she contends there was a pattern of similar conduct.  Doc. 12 at 3–4.  Specifically, plaintiff alleges that Linn County BOCC:  (1) knew about Officer Carr's sexual assault of a female coworker, (2) knew of Huggins's conduct through the August 2017 text message that Sheriff Filla received, and (3) knew about Huggins's inappropriate behavior as evidenced by the October 2017 phone call in which Sheriff Filla told Huggins to leave plaintiff alone.  Doc. 87 at 12 (Second Am. Compl. ¶¶ 95–97).  Based on these allegations, plaintiff argues she has pleaded facts capable of supporting a reasonable finding of  "a pattern of unconstitutional conduct that was known to Defendant and demonstrates reckless disregard and deliberate indifference to the rights of Plaintiff."  Doc. 87 at 12 (Second Am. Compl. ¶ 98).

Our Circuit's precedent leads the court to conclude plaintiff hasn't pleaded sufficient facts to support a finding of deliberate indifference. Here, plaintiff's allegations identify one earlier incident: another officer's alleged sexual assault of a female colleague. *Id.* (Second Am. Compl. ¶ 95). Plaintiff also claims allegations about her own sexual assault that allegedly put the Linn County BOCC on notice. *See id.* (Second Am. Compl. ¶¶ 96–97). But, only the first of these examples can qualify as evidence of prior conduct separate from the current case, *i.e.*, the allegations about Officer Carr can serve to establish "'the existence of a pattern of tortious conduct.'" *Waller*, 932 F.3d at 1284 (quoting *Barney*, 143 F.3d at 1307). And, our Circuit has held, as a matter of law, that one earlier similar incident can't establish a pattern for purposes of proving municipal liability. *Id.* at 1287 ("[W]e have expressly held that one prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations." (internal quotation marks and citations omitted)). So, despite the seriousness of her allegations, plaintiff's allegations fall short of what the law requires in a quantitative sense.[4] Also, the governing legal standard establishes that allegations about plaintiff's own sexual assault are insufficient to help establish a pattern—the standard requires multiple prior victims to put Linn County BOCC on "notice that a course of training is deficient in a particular respect[.]" *Connick*, 563 U.S. at 62. Contemporaneous "conduct cannot establish a pattern of violations that would provide notice[.]" *Id.* at 63 n.7 (citation and internal quotation marks omitted).

---

[4] According to the Amended Complaint, Mr. Huggins once stalked and harassed "a minor female at her place of employment." Doc. 87 at 3 (Second Am. Compl. ¶ 18) ("While an Officer of the LaCygne Police Department and while in uniform, . . . Huggins began to stalk and harass a minor female at her place of employment."). But, plaintiff never argues that this conduct, which occurred while Mr. Huggins was employed by a different law enforcement agency, affects the legal analysis for her failure to train claim against either Linn County BOCC or Pleasanton.

But there's another route plaintiff might pursue to save her training claim from the current motion. "Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Waller*, 932 F.3d at 1284 (internal quotation marks and citation omitted). Our Circuit—albeit in a different context—has rejected the idea that sexual assault is a plainly obvious consequence of insufficient training of law enforcement officers. *Schneider*, 717 F.3d at 774 ("'[S]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.'" (quoting *Barney*, 143 F.3d at 1308)). The contextual difference between *Schneider* and this case is immaterial. If the governing law holds that legal officials don't require "specific or extensive" training to know that they can't sexually assault inmates—and in our Circuit it does—then it likewise rejects the idea that deputy sheriffs need training to know that they can't sexually assault high school students. Finding no reason to distinguish *Schneider* from this case, the court rejects any argument to the contrary.

Linn County BOCC makes one other, last argument that merits discussion. Specifically, it argues, "Plaintiff fails to explain how any of these three allegations establishes anything about the *training* . . . employees received on how to respond to and investigate allegations of sexual misconduct." Doc. 19 at 2. Defendant argues that plaintiff's logic is "duplicative" of another claim in her Second Amended Complaint: a failure to supervise and discipline Huggins for sexual misconduct. *Id.* at 3. The court agrees. While these details might support a finding that Linn County BOCC failed to supervise and discipline Huggins appropriately, they don't identify any facts about Linn County BOCC's *training* efforts before the allegations involving Mr. Huggins and plaintiff which could support a finding or inference that Linn County BOCC wasn't

doing enough to train. The notion of training involves before-the-fact efforts to prevent harm from unfolding. Here, plaintiff's logic about a failure to train claim closely tracks (indeed, it mirrors) her arguments in Count I about a failure to supervise and discipline. *Compare* Doc. 87 at 9–11 (Second Am. Compl. ¶¶ 77–89), *with* Doc. 87 at 11–13 (Second Am. Compl. ¶¶ 90–101).

In sum, the court concludes that plaintiff has failed to plead facts that could support a plausible and legally sustainable failure to train claim. The court grants Linn County BOCC's Motion to Dismiss (Doc. 7) in part, dismissing Count II because plaintiff failed to plead facts capable of supporting a reasonable finding that the Linn County BOCC acted with deliberate indifference.[5]

### C. Pleasanton's Motion for Partial Judgment on the Pleadings

Pleasanton's Motion for Partial Judgment on the Pleadings (Doc. 5) largely mirrors the arguments presented in Linn County BOCC's Motion to Dismiss. Pleasanton argues plaintiff's allegations "fall far short" of alleging a legally viable failure to train claim. Doc. 6 at 8. The legal framework for analyzing plaintiff's failure to train claim is no different from the framework applied above. Likewise, the governing legal standard for a Rule 12(c) motion is the same as the standard applied to Linn County BOCC's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *Borde*, 514 F. App'x at 799.

According to Pleasanton, the "School District is entitled to dismissal because Plaintiff fails to allege facts sufficient [to] state a plausible claim." Doc. 6 at 1. Count VII of the Second Amended Complaint is the operative claim. *See* Doc. 87 at 20–21 (Second Am. Compl. ¶¶ 147–

---

[5] This dismissal is with prejudice. Dismissal "'with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile[.]" *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). Plaintiff hasn't identified any alleged facts that could shore up her failure to train claim and, indeed, she hasn't suggested she could do so. Thus, the court dismisses Count II with prejudice.

56) (alleging a cause of action against Pleasanton under § 1983 for failure to train, violating plaintiff's Fourteenth Amendment rights).

According to this part of the Second Amended Complaint, Pleasanton, "through its employees, who were acting under color of law in their capacities as employees of the School District, deprived Plaintiff of her rights under the 14th Amendment[.]"  Doc. 87 at 20 (Second Am. Compl. ¶ 148).  Plaintiff alleges Pleasanton "failed to adequately train its employees and/or members in the handling and proper investigation of allegations of sexual harassment and abuse."  *Id.* (Second Am. Compl. ¶ 149).  Pleasanton's failure to train its staff, according to the Second Amended Complaint, "reflects a reckless disregard for or deliberate indifference to the rights of students such that the inadequate training or supervision represents policy."  *Id.* (Second Am. Compl. ¶ 150).  And training measures designed to instruct employees when to "investigate and protect school children from sexual assault [are] a necessity to prevent the recurrence of sexual assault[.]"  *Id.* (Second Am. Compl. ¶ 151).  The Second Amended Complaint asserts that Pleasanton's failure "to investigate and protect Plaintiff" from sexual assault, despite "multiple instances of warning and actual knowledge of Huggins['s] ongoing sexual assault and sexual misconduct against Plaintiff" reflects "a pattern of unconstitutional conduct that was known to Defendant."  *Id.* (Second Am. Compl. ¶ 152).  Plaintiff alleges that Pleasanton's failure to "correct this pattern represents a deliberate indifference to Plaintiff's rights."  *Id.* (Second Am. Compl. ¶ 153).

Plaintiff's argument contends it's "a known and obvious risk that adult teachers or authority figures present a risk of sexually harassing or assaulting students."  Doc. 11 at 2.  And so, she argues, Pleasanton's "failure to train its employees on detecting and investigating sexual harassment of students represents deliberate indifference because it is obvious that a male

16

teacher or authority figure sexually harassing or assaulting a female student deprives her of her rights and educational services." *Id.*

Pleasanton responds, arguing that plaintiff's allegations merely recite the governing legal standards, but she fails to provide "sufficient facts to state a plausible failure to train claim" under that standard. Doc. 6 at 7. "The deliberate indifference standard requires that 'the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard [the] risk of harm.'" *Id.* (quoting *Waller*, 932 F.3d at 1284). Pleasanton asserts that plaintiff has failed to allege facts capable of supporting a finding that it had actual or constructive notice, as *Waller* requires. *Id.* ("No notice was present here prior to the allegations against Huggins."); *see also Waller*, 932 F.3d at 1284.

In this context, it's evident that plaintiff alleges Pleasanton failed to do enough to train its staff how to spot and stop sexual predation, ameliorate abusive incidents faster, and ensure its hiring decisions wouldn't introduce abusers into the school setting. *See* Doc. 87 at 20–21 (Second Am. Compl. ¶¶ 147–56). Some of these themes are better slotted within plaintiff's other allegations. *See id.* at 21–23 (Second Am. Compl. ¶¶ 157–64) (alleging a cause of action against Pleasanton for negligence); *cf. Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1257 (10th Cir. 2007) ("Negligence is not a basis for liability under § 1983[.]"). Others fall short for a different reason.

"[O]ne prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations." *Waller*, 932 F.3d at 1287 (internal quotation marks and citations omitted). Here, plaintiff alleges, just one earlier incident within the school district: "In February 2015, a male teacher employed by [Pleasanton]

17

was caught sexually soliciting a minor female student through text messages." Doc. 87 at 3 (Second Am. Compl. ¶ 13). So, even if the court accepts that Pleasanton had actual or constructive notice of the problem—as plaintiff alleges and supports with factual contentions—there's no pattern of similar tortious conduct as required by Circuit authority. *Waller*, 932 F.3d at 1285 ("To satisfy the stringent deliberate indifference standard, a pattern of similar constitutional violations by untrained employees is ordinarily necessary." (quotation cleaned up)); *see also Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987) ("One instance, however egregious, does not a pattern or practice make.").

Plaintiff does allege facts that arguably might support an alternative route for her failure to train claim to advance. She argues that the injuries she sustained stemmed from an obvious risk. Doc. 11 at 1; *see also Waller*, 932 F.3d at 1284 ("Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances [such as] where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." (internal quotation marks and citation omitted)). But controlling authority in our Circuit doesn't permit claims like the ones asserted here to support a failure to train based on the obvious risk theory. *See Schneider*, 717 F.3d at 774 ("[S]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." (internal quotation marks and citation omitted)). Stated simply, plaintiff hasn't identified any authority in our Circuit suggesting that one incident of similar sexual abuse in a public school setting represents a patently obvious threat of constitutional injury such that a pattern of similar violations isn't required.[6] *See Connick*, 563 U.S. at 64.

---

[6] Plaintiff's papers cite one case that's similar in some respects, but different in others. *See* Doc. 11 at 1–2 (discussing *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007)). Both cases involve allegations of sexual assault in a school setting. But they differ in an important sense: *Simpson* involved repeated instances of sexual violence, repeated complaints to the university, and promises by the

In sum, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61 (citation omitted). Plaintiff's failure to train allegations face this high bar because a "less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities[.]" *Id.* at 62 (citation and internal quotation marks omitted). The court concludes that plaintiff's allegations here don't provide the kind of factual allegations required to clear this high bar. The court thus grants Pleasanton's Motion for Partial Judgment on the Pleadings (Doc. 5).[7] Pleasanton's motion asks the court to dismiss this count, so the court dismisses Count VII. Like the dismissal of the failure to train claim against Linn County BOCC, this dismissal is with prejudice. *See Knight*, 749 F.3d at 1190.

## IV. Conclusion

This case involves distressing allegations. And while the court assumes all of plaintiff's well-plead factual allegations are true, *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), the court must evaluate those allegations under the controlling legal standard. The failure to train claims in Counts II and VII fall short of our Circuit's requirements for a plausible claim. The court thus grants Linn County BOCC and Pleasanton's motions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Unified School District 344 Pleasanton's Motion for Partial Judgment on the Pleadings (Doc. 5) is granted. The court dismisses Count VII of her Second Amended Complaint, her failure to train claim against

---

university to fix the problem. *See Simpson*, 500 F.3d at 1181–83 (describing more than one earlier, similar incident; the university's unfulfilled promise to stop these instances from occurring in the future; and documented instances of sexual misconduct and drug use after others made allegations about similar conduct). Thus, *Simpson* is analogous to plaintiff's lawsuit in some respects, but not in the important sense that this case lacks a pattern of sexual assault.

[7]   Pleasanton's motion asks the court to dismiss Count VII, so the relief granted by this Order conforms to Pleasanton's motion. Like the dismissal of the failure to train claim asserted against Linn County BOCC, this dismissal is with prejudice. *See Knight*, 749 F.3d at 1190.

Pleasanton Unified School District 344, with prejudice. Counts VI and VIII remain against defendant Pleasanton.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Linn County BOCC's Motion to Dismiss (Doc. 7) is granted in part and denied in part. The court dismisses Count II of the Second Amended Complaint, asserting a failure to train claim against Linn County BOCC, with prejudice. But, Linn County BOCC remains a defendant in this suit, because plaintiff amended her Complaint and named the proper entity. Counts I, III, IV, and V remain against defendant Linn County BOCC.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Paul Filla's Motion for Judgment on the Pleadings (Doc. 9) is denied as moot because Sheriff Filla already was dismissed from the case by the parties' Stipulation of Dismissal (Doc. 42).

**IT IS SO ORDERED.**

**Dated this 3rd day of December, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
