**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ALEXIS SWEARINGEN,** | |
| **Plaintiff,** | **Case No. 2:20-cv-02630-DDC-TJJ** |
| **v.** | |
| **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LINN COUNTY, KS, et al.,** | |
| **Defendants.** | |

**JOINT RESPONSE OF DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF LINN COUNTY AND KEVIN FRIEND TO PLAINTIFF'S MOTION TO DEFER CONSIDERATION OF SUMMARY JUDGMENT AND TO REOPEN DISCOVERY**

**I.      Introduction**

This is a claim brought pursuant to 42 U.S.C. § 1983, Title IX of 20 U.S.C. §§ 1681 *et seq.*, and Kansas common law.  Plaintiff, Alexis Swearingen, alleges that David Allen Huggins, who was the school resource officer ("SRO") of the high school she attended, impregnated her while she was a student and that Defendant Board of County Commissioners of Linn County ("BOCC") and Defendant Kevin Friend, in his official capacity as Sheriff of Linn County (collectively, "Linn County Defendants"), along with Defendant Pleasanton Unified School District 344 ("USD 344"), are civilly liable to her.

Discovery closed on November 30, 2021.  Defendant USD 344 filed a motion for summary judgment on March 17, 2022.  (Doc. 110).  The Linn County Defendants filed a motion for summary judgment on March 18, 2022.  (Doc 113).  Also on March 18, 2022, the Linn County Defendants produced an email dated October 26, 2017 ("the Johnson email") from Linn County Sheriff's Office ("LCSO") Detective Bobby Johnson to Paul Filla, who was Sheriff of

Linn County at the time, that contained information about Huggins and Plaintiff.  The Johnson email was identified for the first time by undersigned counsel as he was preparing the Linn County Defendants' joint motion for summary judgment.  Counsel identified it as being responsive to Request No. 8 of Plaintiff's requests for production to the BOCC of Linn County, which requested "[d]ocuments relating to David Allen Huggins communications or conduct with respect to any child," and supplemented the responses to include the Johnson email as required by Fed. R. Civ. P. 26(e).  Plaintiff now requests (1) an additional 45 days to conduct discovery based on the information contained in the Johnson email, (2) additional time to respond to Defendants' respective motions for summary judgment, (3) permission to amend her initial disclosures "to add additional witnesses identified during this discovery period," and (4) permission for her experts to revise their opinions. (Doc. 117).

## II.     Issues Presented

    **A.**     **Should Plaintiff's request for additional discovery be granted when the information that forms the basis of her request was known to her since the early stages of discovery?**

    **B.**     **Should Plaintiff's motion be denied when her counsel's affidavit in support of the motion is deficient?**

## III.     Argument and Authority

    **A.**     **Plaintiff should not be permitted to conduct additional discovery because the information contained in the Johnson email that Plaintiff wants to explore in discovery was known to her since the early stages of discovery.**

All of the individuals identified in the Johnson email were known to Plaintiff as early as June 4, 2021, nearly six months before discovery closed on November 30, 2021, when Defendant USD 344 served its Rule 26(a)(1) Initial Disclosures containing their names.[1]  Detective Johnson

---

[1] The Linn County Defendants, in their Rule 26 initial disclosures served June 7, 2021, incorporated the witnesses identified by Defendant USD 344 in their disclosures by identifying "[a]ny individuals identified in Defendant USD's disclosures pursuant to Fed. R. Civ. P. 26."

was identified as someone "believed to have information concerning his investigation of Mr.
Huggins and the vents which are the subject of this litigation."  Mound City Police Department
Chief Paul McKee and Mound City Police Department Officer Mike Feagins (misspelled as
Mike "Faggins" in the Johnson email) were identified as individuals "believed to have
information concerning [their] recollection of the investigation of Mr. Huggins and Plaintiff."

Paul Filla was Sheriff of Linn County at all times relevant to this lawsuit and retired in
September 2018. (Doc 103, p. 3; Filla Dep. 4:24-5:11, Ex. 1).[2]  Unfortunately, Filla passed away
on April 9, 2022.[3]  During his deposition, Filla testified about a variety of subjects, including his
recollection of the circumstances by which he learned that Huggins may have been having an
inappropriate relationship with Plaintiff and whether LCSO conducted an investigation.

Filla referred the matter to the Kansas Bureau of Investigations ("KBI") after he learned
of a rumor that Plaintiff put her foot on Huggins's crotch underneath a table at a local restaurant
where she worked, Garrett's Barbeque, which was owned by Melissa Garrett.  Filla said he
believes he heard this rumor from LCSO Deputy Tom "Chip" More.  However, Filla did not
attempt to hide his uncertainty about this statement by stating "I don't – and I'm not sure it was
actually from Tommy, but it was from somebody but it wasn't from Garrett, I know that." (Filla
Dep. 36:1-37:1, Ex. 1).[4] Filla proceeds to testify "I say Tommy More – or Chip Moore, but it
may not have been him either, but I did hear about it.  I did hear about it, so…" (*Id.* at 37:2-13,
Ex. 1).  Plaintiff's counsel proceeded to question him, asking "Oh, I understand, but in terms of

---

[2] Defendant Friend began serving as Sheriff of Linn County in October 2019 and currently holds that role.
(Friend Aff. ¶ 1, Ex. 3).  Sheriff Friend was not the Sheriff when Huggins was employed by LCSO, he
never employed Huggins, nor has he ever met Huggins. (Friend Aff. ¶ 2-3, Ex. 3).  Plaintiff never
deposed Sheriff Friend.
[3] Filla's obituary can be located at https://www.fstribune.com/story/2943803.html.
[4] Plaintiff alleges Melissa Garrett, who was the owner of the barbeque restaurant where Plaintiff worked,
took a photograph of Plaintiff and Huggins sitting in a booth at the restaurant being physically intimate.
This alleged photograph has never been produced or located, and Plaintiff never saw it.

whoever told you their source of information, do you have any idea who that was?" (*Id.* at 37:24-38:1, Ex. 1) Filla responded "You already asked me that and I said I don't recall right offhand but I'm thinking it might be Chip, but it could very easily have been somebody else.  The fact is I did know about it."  (Filla Dep. 38:2-5, Ex. 1).

Filla did not identify Detective Johnson as someone who was involved in an investigation of Huggins and Plaintiff.  Rather, Filla said that he did not believe LCSO conducted an investigation but, instead, referred the matter to the KBI, which conducted an investigation. However, Filla's uncertainty was apparent, as exemplified in the following exchange between Plaintiff's counsel and Filla.

> Q. Did anyone at the Sheriff's Office investigate the incident?
> A. you know, I keep saying I don't know.  It seems to me that this was about – when it came to my attention it was close to the time we were getting ready to turn it over to the KBI and we passed that on to them at that time.

(Filla Dep. 38:22-39:3, Ex. 1).

Filla's testimony made it obvious that there was a distinct likelihood individuals other than Deputy More had information about Plaintiff and Huggins.  In the initial disclosures, well before Filla's deposition, Plaintiff was told that Johnson, McKee and Feagins may have information about the investigation of Plaintiff and Huggins.  Plaintiff could have questioned Filla about their involvement in an attempt to refresh his recollection, but she chose not to. Plaintiff also could have questioned those individuals directly in a deposition, which would have allowed her to obtain the information she now seeks, but she chose not to.  Moreover, Plaintiff knew Melissa Garrett may have information regarding Plaintiff and Huggins given that Plaintiff alleged Ms. Garrett took a picture of Huggins and Plaintiff being physically intimate at the restaurant and sent it to Sheriff Filla. (Doc. 1).  However, Plaintiff chose not to question her.

Similarly, LCSO Deputy More, who is also referenced in the Johnson email, was identified extensively in discovery.  Deputy More was involved in the initial investigation of Plaintiff's pregnancy with the Kansas Department of Children and Families.  (More Aff. ¶ 1-9, Ex. 2).  His role in this investigation was documented in a written narrative, which was produced to Plaintiff as LC 000484-LC 000485 on August 13, 2021.  Furthermore, in their interrogatory responses served on the same day, the Linn County Defendants discussed Deputy More as someone who "has information related to the Linn County Sheriff's Office becoming aware that there was potentially an improper relationship between Plaintiff and David Allen Huggins." (BOCC Interrog. Answers No. 1, Ex. 4). As they further explained,

> Deputy Tom More heard an unconfirmed rumor that Plaintiff was seen putting her foot between Huggins's legs while at a restaurant. Deputy More also learned that Plaintiff had been spending a lot of time in Huggins's office at the high school, which by itself did not cause More to suspect improper behavior, but, when considered with the restaurant rumor described above and the investigation surrounding Plaintiff's pregnancy, caused him to convey this information to Paul Filla, who was Sheriff of Linn County at the time.  Sheriff Filla promptly reported it to the KBI, which conducted an investigation that led to the arrest of Huggins.

(*Id.* at No. 7, Ex. 4).  Plaintiff could have deposed Deputy More about his role in the investigation of Plaintiff's pregnancy and his knowledge about Plaintiff's interactions with Huggins, but she chose not to.

In her Motion, Plaintiff also mentions the Johnson email's reference to parents of Plaintiff's school complaining about Huggins.  Again, this information was already known to Plaintiff.  As Defendant USD 344 points out in its response to the present Motion, Plaintiff knew well before discovery closed that a parent, Chastity Greene, emailed Superintendent Travis Laver to report that Huggins sent a friend request to her daughter on social media and also that other parents had expressed concerns about Huggins being around their daughters.  The email was

produced by Defendant USD 344 on June 4, 2021 as part of its initial disclosures. Plaintiff asked Superintendent Laver and Sheriff Filla about the email during their depositions.  Plaintiff could have questioned Ms. Greene either informally or in a deposition to obtain additional information about her concern or the concerns of other parents, but she chose not to.

Discovery is a two-way street.  The information Plaintiff seeks was available to her long before discovery closed.  All of the individuals referenced in the Johnson email were known by Plaintiff to have information about the subject matters discussed in the email.  Plaintiff would have obtained that information had she deposed them, but she elected not to.

### B.      Plaintiff's counsel's affidavit under Rule 56(d) is inadequate.

Pursuant to Fed. R. Civ. P. 56(d), a district court may permit additional time for discovery if "a non-movant shows by affidavit or declaration that it cannot present facts essential to justify its opposition to the motion."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015).  In the Tenth Circuit, "Rule 56(d) does not operate automatically; rather, its protections . . . can be applied only if a party satisfies certain requirements."  *Valley Forge Ins. Co. v. Health Care Mgmt. Ptnrs, LTD*, 616 F.3d 1086, 1096 (10th Cir. 2010).  The plaintiff's declaration must specify (1) the probable facts not available; (2) why those facts cannot be presented currently; (3) what steps have been taken to obtain these facts; and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.  *Id. See also Birch*, 812 F.3d at 1250-51 (concluding that the district court did not abuse its discretion in denying the plaintiffs relief under Rule 56(d) on the basis that "they had not submitted a sufficiently detailed affidavit"); *Wilcox v. Career Step, LLC*, No. 2:08-CV-0998, 2012 WL 5997201, at *3 (Nov. 30, 2012) (finding the plaintiff's Rule 56(d) motion without  merit based on a deficient affidavit that did not lay out which probable facts were not available to the

plaintiff and why they could not be presented currently, what steps the plaintiff intends to take in obtaining those facts and how the additional time would allow the plaintiff to rebut the motion for summary judgment).

Importantly, "Rule 56(d) may not be invoked based solely upon the assertion that discovery is incomplete or that the specific facts necessary to oppose summary judgment are unavailable." *Schaefer v. Antill*, No. 06-0460, 2007 WL 709046, at *9 (D.N.M. Jan 31, 2007). *See also Lewis v. City of Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990) ("Rule 56(d) is not a license for a fishing expedition").

Here, Plaintiff's motion and her counsel's affidavit contain no explanation as to why discovery was not performed with regard to any of the persons in Johnson's email even though they were identified in the initial disclosures and throughout discovery. They also do not sufficiently explain how additional discovery would allow Plaintiff to create a genuine dispute as to a material fact as to whether Linn County Defendants violated § 1983 or Title IX or was otherwise negligent under Kansas common law.   Consequently, the Court should deny Plaintiff's motion.

## IV.     Conclusion

Plaintiff's motion should be denied because the information contained in the Johnson email that Plaintiff wants to further explore in discovery was known to Plaintiff since the early stages of discovery.  Moreover, her counsel's affidavit in support of the motion is inadequate.

Consequently, the Linn County Defendants respectfully requests that the Court deny Plaintiff's motion and grant such other relief as the Linn County Defendants may show they are entitled to and the Court deems to be reasonable, appropriate, and just

Respectfully submitted,

**Case Linden P.C.**


s/ Cory R. Buck
Kevin D. Case, KS 14570
Cory R. Buck, KS 25969
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
cory.buck@caselinden.com
Attorneys for the Linn County Defendants

## Certificate of Service

 I hereby certify that on April 15, 2022, a true and correct copy of the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Christopher S. Dove
Daniel R. Zmijewski
DRZ Law, LLC
8700 State Line Rd., Ste. 305
Leawood, KS  66206
Attorneys for Plaintiff

Michael K. Seck
Fisher, Patterson, Sayler & Smith, LLP
51 Corporate Woods, Ste. 300
9393 West 110th Street
Overland Park, KS  66210-1402
Attorneys for Defendant Pleasanton Unified School District 344


s/ Cory R. Buck
Cory R. Buck